IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Case No: 1:23-cr-00100-JDB |
| v. | : | |
| | : | 18 U.S.C. § 231(a)(3) |
| TYNG JING YANG | : | |
| Defendant. | : | |

**STATEMENT OF OFFENSE**

Pursuant to Federal Rule of Criminal Procedure 11, the United States of America, by and through its attorney, the United States Attorney for the District of Columbia, and the defendant, TYNG JING YANG, with the concurrence of his attorney, agree and stipulate to the below factual basis for the defendant's guilty plea—that is, if this case were to proceed to trial, the parties stipulate that the United States could prove the below facts beyond a reasonable doubt.

*The Attack at the U.S. Capitol on January 6, 2021*

1. The U.S. Capitol, which is located at First Street, SE, in Washington, D.C., is secured 24 hours a day by U.S. Capitol Police. Restrictions around the U.S. Capitol include permanent and temporary security barriers and posts manned by U.S. Capitol Police. Only authorized people with appropriate identification are allowed access inside the U.S. Capitol.

2. On January 6, 2021, the exterior plaza of the U.S. Capitol was closed to members of the public.

3. On January 6, 2021, a joint session of the United States Congress convened at the United States Capitol, which is located at First Street, SE, in Washington, D.C. During the joint session, elected members of the United States House of Representatives and the United States

Senate were meeting in separate chambers of the United States Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on November 3, 2020. The joint session began at approximately 1:00 p.m. Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

4. As the proceedings continued in both the House and the Senate, and with Vice President Pence present and presiding over the Senate, a large crowd gathered outside the U.S. Capitol. As noted above, temporary and permanent barricades were in place around the exterior of the U.S. Capitol building, and U.S. Capitol Police were present and attempting to keep the crowd away from the Capitol building and the proceedings underway inside.

5. At approximately 2:00 p.m., certain individuals in the crowd forced their way through, up, and over the barricades, and officers of the U.S. Capitol Police, and the crowd advanced to the exterior façade of the building. The crowd was not lawfully authorized to enter or remain in the building and, prior to entering the building, no members of the crowd submitted to security screenings or weapons checks by U.S. Capitol Police Officers or other authorized security officials.

6. At such time, the certification proceedings were still underway and the exterior doors and windows of the U.S. Capitol were locked or otherwise secured. Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of law enforcement, as others in the

crowd encouraged and assisted those acts.  The riot resulted in substantial damage to the U.S. Capitol, requiring the expenditure of more than $2.8 million dollars for repairs.

7. Shortly thereafter, at approximately 2:20 p.m., members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Pence, were instructed to—and did—evacuate the chambers. Accordingly, all proceedings of the United States Congress, including the joint session, were effectively suspended until shortly after 8:00 p.m. the same day. In light of the dangerous circumstances caused by the unlawful entry to the U.S. Capitol, including the danger posed by individuals who had entered the U.S. Capitol without any security screening or weapons check, Congressional proceedings could not resume until after every unauthorized occupant had left the U.S. Capitol, and the building had been confirmed secured.  The proceedings resumed at approximately 8:00 p.m. after the building had been secured.  Vice President Pence remained in the United States Capitol from the time he was evacuated from the Senate Chamber until the session resumed.

### *Tyng Jing Yang's Participation in the January 6, 2021 Capitol Riot*

8. The defendant, Tyng Jing Yang ("YANG"), lives in Hoffman Estates, Illinois. On January 5, 2021, he flew to Washington, D.C., arriving later that same day.

9. On the morning of January 6, 2021, YANG left his hotel to the political rally held at the Ellipse. While there, YANG heard the various speakers, but could not see them from where he was standing. YANG left the rally and walked towards the U.S. Capitol building with other people. As he approached the Capitol building, he found himself near a barricaded area and observed a person who appeared to have been recently pepper sprayed. YANG helped that person.

10. YANG observed people standing in front of a fence and proceeded to walk to the U.S. Capitol building. At approximately 2:45 p.m. on January 6, 2021, YANG unlawfully entered the U.S. Capitol building through the Upper West Terrace door on the first floor. He walked upstairs, and by approximately 2:46 p.m. entered the Rotunda through the west door. He appeared to be taking videos and photographs on his telephone. Roughly one minute later, he exited the Rotunda and then returned at approximately 3:03 p.m.

11. While back in the Rotunda, YANG appeared to speak with another individual, identified as Garrett Miller ("Miller"). The two took photographs together with their telephones and walked around the Rotunda.

12. Shortly thereafter, law enforcement officers (including members of the Metropolitan Police Department ("MPD") and the U.S. Capitol Police Department ("USCP")) began to fill the west side of the Rotunda and form a line. Many of the officers displayed extendable batons in their hands. YANG and others stood next to the line of police officers but refused to move back or leave the Rotunda. The officers began to press towards the mob in an effort to clear the Rotunda of unauthorized individuals, pushing the mob back towards the door on the east side of the Rotunda. YANG and other rioters refused to comply and to move back towards the door despite the advancing line of police officers.

13. At approximately 3:09 p.m., YANG stood near the police line in the midst of the crowd of rioters. As officers began pushing YANG and other members of the mob who remained in the Rotunda, a fellow rioter struck one of the officers in the head. When other officers responded, YANG attempted to push them back and briefly grabbed the arm of one of the officers. YANG did not leave the Rotunda that time.

14. Shortly thereafter, another officer pushed YANG back towards the door. Instead of leaving, YANG confronted the officer and waved his hand in his face. For approximately another minute, YANG remained near the advancing line of police officers with Miller. At approximately 3:10 p.m., as another officer used his baton to push Miller backwards, YANG grabbed hold of the officer's baton.

15. Shortly thereafter, YANG and Miller walked toward the Rotunda exit. YANG then proceeded downstairs, and at approximately 3:15 p.m., exited the U.S. Capitol building. The following day, January 7, 2021, YANG flew back to Chicago, Illinois.

16. The defendant admits that he committed or attempted to commit one or more acts to obstruct, impede, or interfere with one or more law enforcement officers carrying out their official duties in the course of a civil disorder, and that some of those acts were committed through physical contact with one or more law enforcement officers. The defendant further admits the civil disorder obstructed, delayed, or adversely affected commerce or the conduct or the performance of any federally protected function.

### *Elements*

17. The defendant engaged in civil disorder, in violation of 18 U.S.C. § 231(a)(3).

18. Specifically, the defendant admits:

> (a) that he committed or attempted to commit an act with the intended purpose of obstructing, impeding, or interfering with one or more law enforcement officers;
>
> (b) that at the time of his act or attempted act, the law enforcement officers were engaged in the lawful performance of their official duties incident to and during a civil disorder; and

(c) that the civil disorder in any way or degree obstructed, delayed, or adversely affected commerce or the movement of any article or commodity in commerce, or the conduct or performance of any federally protected function.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney

By: /s/ Craig Estes
Craig Estes
Assistant United States Attorney

## DEFENDANT'S ACKNOWLEDGMENT

I, Tyng Jing Yang, have read this Statement of the Offense and have discussed it with my attorney. I fully understand this Statement of the Offense. I agree and acknowledge by my signature that this Statement of the Offense is true and accurate. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of the Offense fully.

Date: 09/06/2023

Tyng Jing Yang
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read this Statement of the Offense and have reviewed it with my client fully. I concur in my client's desire to adopt this Statement of the Offense as true and accurate.

Date: September 6, 2023

Paulette M. Pagán, Esq.
Attorney for Defendant